IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:23-CV-466-D

| | |
|---|---|
| BRADLEY SHOCK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| WELLS FARGO BANK, N.A., et al., ) | |
| ) | |
| Defendants. ) | |

On June 28, 2023, Bradley Shock ("Shock" or "plaintiff") filed a complaint in Wake County Superior Court against Wells Fargo Bank, N.A. ("Wells Fargo") and David Bird ("Bird"), individually and his official capacity as a City of Cary Police Officer (collectively, "defendants"). See [D.E. 1-1]. Shock alleges (1) malicious prosecution (against Wells Fargo and Shock), (2) negligence (against Wells Fargo only), (3) negligent infliction of emotional distress (against Wells Fargo only), (4) a violation of the Fifth Amendment of the United States Constitution under 42 U.S.C. § 1983 (against Bird only), (5) a violation of Monell v. Department of Social Services, 436 U.S. 658 (1978) (against City of Cary only), and (6) respondeat superior (against City of Cary only). See [D.E. 1-1] 8–13. Bird seeks damages in excess of $25,000, attorney's fees, and any other applicable remedy. See id. at 11, 13. On August 23, 2023, Bird, with the consent of Wells Fargo, removed this action to federal court [D.E. 1]. On August 29, 2023, Bird moved to dismiss the complaint for lack of personal jurisdiction and failure to state a claim upon which relief can be granted [D.E. 8] and filed a memorandum in support [D.E. 9]. See Fed. R. Civ. P. 12(b)(2), (b)(6). Shock did not respond. As explained below, the court grants Bird's motion to dismiss and dismisses the claims against both Bird and the City of Cary.

I.

On May 27, 2005, Betty Fallin ("Fallin") authorized Shock, her nephew, as her agent for a special durable power of attorney located at Wachovia Bank in Cary, North Carolina. See [D.E. 1-1] 7. In 2012, Fallin gave Shock signature authority and named Shock as her transfer of death beneficiary at the same bank (now a Wells Fargo). See id. During this time, Shock managed Fallin's online banking accounts and used a debit card attached to the account to pay bills on Fallin's behalf. See id. No issues arose with this arrangement. See id. In 2016, Fallin moved to Rex Nursing Home. See id. On December 2, 2016, Fallin updated her durable power of attorney to expand Shock's authority to include all her bank accounts. See id.

In November 2019, Shock left for a three-month vacation in Thailand. See id. Due to the COVID-19 pandemic, Shock obtained an extended visa to remain in Thailand. See id. at 7–8. In July 2020, Fallin died. See id. at 8. On an unknown date in the summer of 2020, Wells Fargo locked Fallin's account until Shock could produce a power of attorney. See id. Shock failed to produce the document. See id. In August 2020, Shock sent keys to his sister to retrieve the power of attorney from Fallin's residence. See id.

In September 2020, Shock gave the power of attorney to Bird, a detective for the Cary Police Department in Cary, North Carolina. See id. at 6, 8.[1] On November 6, 2020, the Cary Police Department obtained an arrest warrant charging Shock with Exploitation of an Older Adult or Disabled Adult, N.C. Gen. Stat. § 14-112.2(b). See id. at 8. On March 28, 2022, Shock's criminal case was dismissed. See id.

---

[1] Shock pleads no facts explaining why he gave the power of attorney to Detective Bird or when he returned from Thailand.

II.

Bird moves to dismiss for lack of personal jurisdiction. See [D.E. 8] 1; [D.E. 9] 2; Fed. R. Civ. P. 12(b)(2). "[A]n individual is subject to general jurisdiction in [his] place of domicile." Zimmerman v. Great Am. Ins. Grp., No. 7:21-CV-108, 2022 WL 2311776, at *3 n.3 (E.D.N.C. June 27, 2022) (unpublished) (quotation omitted), aff'd sub nom. Zimmerman v. Great Am. Ins. Co., No. 22-1749, 2023 WL 5696526 (4th Cir. Sept. 5, 2023) (per curiam) (unpublished); see Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct., 141 S. Ct. 1017, 1024 (2021); Daimler AG v. Bauman, 571 U.S. 117, 137 (2014); Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 924 (2011). Shock alleges Bird is "a citizen and resident of Wake County, North Carolina." [D.E. 1-1] 6. Bird fails to submit any evidence that he is not domiciled in North Carolina. Thus, this court has personal jurisdiction over Bird and denies Bird's motion to dismiss for lack of personal jurisdiction.

Bird also moves to dismiss the claims against him under Rule 12(b)(6). A motion to dismiss under Rule 12(b)(6) tests the complaint's legal and factual sufficiency. See Ashcroft v. Iqbal, 556 U.S. 662, 677–80 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554–63 (2007); Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). To withstand a Rule 12(b)(6) motion, a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (quotation omitted); see Twombly, 550 U.S. at 570; Giarratano, 521 F.3d at 302. In considering the motion, the court must construe the facts and reasonable inferences "in the light most favorable to [the nonmoving party]." Massey v. Ojaniit, 759 F.3d 343, 352 (4th Cir. 2014) (quotation omitted); see Clatterbuck v. City of Charlottesville, 708 F.3d 549, 557 (4th Cir. 2013), abrogated on other grounds by Reed v. Town of Gilbert, 576 U.S. 155 (2015). A court need not accept as true a complaint's legal conclusions, "unwarranted inferences, unreasonable

3

conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 678–79. Rather, a plaintiff's factual allegations must "nudge[] [his] claims," Twombly, 550 U.S. at 570, beyond the realm of "mere possibility" into "plausibility." Iqbal, 556 U.S. at 678–79.

When evaluating a motion to dismiss, a court considers the pleadings and any materials "attached or incorporated into the complaint." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011); see Fed. R. Civ. P. 10(c); Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 165–66 (4th Cir. 2016); Thompson v. Greene, 427 F.3d 263, 268 (4th Cir. 2005). A court also may consider a document submitted by a moving party if it is "integral to the complaint[,] and there is no dispute about the document's authenticity" without converting the motion into one for summary judgment. Goines, 822 F.3d at 166. "[I]n the event of conflict between the bare allegations of the complaint and any exhibit attached . . . , the exhibit prevails." Id. (quotation omitted); see Fayetteville Invs. v. Com. Builders, Inc., 936 F.2d 1462, 1465 (4th Cir. 1991). Additionally, a court may take judicial notice of public records. See, e.g., Fed. R. Evid. 201; Tellabs, Inc. v. Makor Issues & Rts., Ltd., 551 U.S. 308, 322 (2007); Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

North Carolina law applies to some claims in this action. For those claims, this court must predict how the Supreme Court of North Carolina would rule on any disputed state-law issue. See Twin City Fire Ins. Co. v. Ben Arnold-Sunbelt Beverage Co., 433 F.3d 365, 369 (4th Cir. 2005). First, the court looks to opinions of the Supreme Court of North Carolina. See Parkway 1046, LLC v. U. S. Home Corp., 961 F.3d 301, 306 (4th Cir. 2020); Stahle v. CTS Corp., 817 F.3d 96, 100 (4th Cir. 2016). If there are no governing opinions from that court, this court may consider the opinions of the North Carolina Court of Appeals, treatises, and "the practices of other states." Twin City Fire Ins. Co., 433 F.3d at 369 (quotation and citation omitted). In doing so, this court "should not create

4

or expand a [s]tate's public policy." Time Warner Ent.-Advance/Newhouse P'ship v. Carteret-Craven Elec. Membership Corp., 506 F.3d 304, 314 (4th Cir. 2007) (alteration and quotation omitted); see Day & Zimmermann, Inc. v. Challoner, 423 U.S. 3, 4 (1975) (per curiam); Wade v. Danek Med., Inc., 182 F.3d 281, 286 (4th Cir. 1999). Moreover, in predicting how the highest court of a state would address an issue that it has not yet resolved, this court must "follow the decision of an intermediate state appellate court unless there is persuasive data that the highest court would decide differently." Town of Nags Head v. Toloczko, 728 F.3d 391, 398 (4th Cir. 2013) (quotation omitted); Hicks v. Feiock, 485 U.S. 624, 629–30 & n.3 (1988)

A.

Under North Carolina law, to state a malicious prosecution claim, a plaintiff must plausibly allege that the defendant: "(1) initiated or participated in the earlier proceeding, (2) did so maliciously, (3) without probable cause, and (4) the earlier proceeding ended in favor of the plaintiff." Turner v. Thomas, 369 N.C. 419, 425, 794 S.E.2d 439, 444 (2016); see N.C. Farm Bureau Mut. Ins. Co. v. Cully's Motorcross Park, Inc., 366 N.C. 505, 512, 742 S.E.2d 781, 786–87 (2013). Probable cause means "the existence of such facts and circumstances, known to the defendant at the time, as would induce a reasonable man to commence a prosecution." Turner, 369 N.C. at 425, 794 S.E.2d at 444 (cleaned up); see Best v. Duke Univ., 337 N.C. 742, 750, 448 S.E.2d 506, 510 (1994); Cook v. Lanier, 267 N.C. 166, 170, 147 S.E.2d 910, 914 (1966). A criminal proceeding ending in Shock's favor alone does not "automatically negate the existence of probable cause at the time prosecution was commenced" or establish malice. Turner, 369 N.C. at 425, 794 S.E.2d at 445.

"A plaintiff alleging malicious or intentional acts by a government official faces a high bar . . . ." Fox v. City of Greensboro, 279 N.C. App. 301, 316, 866 S.E.2d 270, 284 (2021). "[T]he malice element may be satisfied by a showing of either actual or implied malice." Kirschbaum v.

5

McLaurin Parking Co., 188 N.C. App. 782, 789, 656 S.E.2d 683, 688 (2008) (quotation omitted). Malice requires that the defendant "was motivated by personal spite and a desire for revenge" or that the defendant acted with "reckless and wanton disregard" for the plaintiff's rights. Fox, 279 N.C. App. at 316, 866 S.E.2d at 284 (quotation omitted); see Kirschbaum, 188 N.C. App. at 789, 656 S.E.2d at 688.

Shock fails to plausibly allege that Bird acted with malice or lacked probable cause to institute a criminal proceeding against him. See, e.g., McClure v. Ports, 914 F.3d 866, 874 (4th Cir. 2019); Green v. Nocciero, 676 F.3d 748, 755 (8th Cir. 2012); Jenkins v. Kinser, No. 3:21-CV-78, 2021 WL 4205606, at *5 (N.D.W. Va. Sept. 15, 2021) (unpublished). Shock alleges "Bird also instituted a criminal proceeding against [Shock] based on the reports by ... Wells Fargo," and "Bird continued the proceeding against [Shock] with malice in that he intentionally continued his active investigation and case even after being presented with exculpatory evidence of [Shock]'s innocence that showed a lack of probable cause." [D.E. 1-1] 9. According to Shock, this exculpatory evidence was the power of attorney authorizing Shock to conduct banking activity on behalf of Fallin. See id.

Bird responds that, without any malice, he investigated Shock for the crime of exploitation of an older adult. See [D.E. 9] 5. Exploitation of an older adult requires "a person ... in a position of trust and confidence with an older adult or disabled adult" who obtains "funds, assets, or property with the intent to temporarily or permanently deprive the older adult or disabled adult of the use, benefit, or possession of the funds, assets, or property, or to benefit someone other than the older adult or disabled adult." N.C. Gen. Stat. § 14-112.2(b). Thus, Shock's alleged exculpatory evidence satisfied an element of the crime and supported Bird's investigation. See [D.E. 9] 5.

6

Shock fails to plausibly allege a malicious prosecution claim. Accordingly, the court dismisses the first claim against Bird.

B.

"A [section] 1983 malicious prosecution action is nothing more than a [section] 1983 claim arising from a Fourth Amendment violation." Lambert v. Williams, 223 F.3d 257, 260 (4th Cir. 2000). Shock improperly seeks to plead this claim under the Fifth Amendment. See Snider v. Lee, 584 F.3d 193, 199 (4th Cir. 2009); Brooks v. City of Winston-Salem, 85 F.3d 178, 185 n.8 (4th Cir. 1996); Taylor v. Waters, 81 F.3d 429, 437 n.6 (4th Cir. 1996). Because no claim exists for malicious prosecution under the Fifth Amendment, the court dismisses Shock's section 1983 claim.

Alternatively, even if Shock seeks to proceed under the Fourth Amendment, the claim fails. Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); see City of Escondido v. Emmons, 139 S. Ct. 500, 503–04 (2019) (per curiam); Kisela v. Hughes, 138 S. Ct. 1148, 1152–55 (2018) (per curiam); District of Columbia v. Wesby, 583 U.S. 48, 62–63 (2018); Hernandez v. Mesa, 582 U.S. 548, 554 (2017); Ziglar v. Abbasi, 582 U.S. 120, 150–51 (2017); King v. Riley, 76 F.4th 259, 266–68 (4th Cir. 2023); Sharpe v. Winterville Police Dep't, 59 F.4th 674, 682–84 (4th Cir. 2023); Burns-Fisher v. Romero-Lehrer, 57 F.4th 421, 424 (4th Cir. 2023); Tobey v. Jones, 706 F.3d 379, 385 (4th Cir. 2013).[2] Qualified immunity protects "all but the plainly incompetent or those who knowingly violate

---

[2] The court recognizes the current state of qualified immunity doctrine and the debate about whether the Supreme Court or Congress should change it. See, e.g., Sharpe, 59 F.4th at 684 n.12. As a lower court, however, this court must follow binding precedent. See id.

7

the law." Malley v. Briggs, 475 U.S. 335, 341 (1986); see Kisela, 138 S. Ct at 1152.

In analyzing qualified immunity, the court asks (1) "whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right," and (2) "whether the right at issue was clearly established at the time of [the] defendant's alleged misconduct." Pearson v. Callahan, 555 U.S. 223, 232 (2009) (cleaned up); see Wood v. Moss, 572 U.S. 744, 757 (2014); Knibbs v. Momphard, 30 F.4th 200, 214 (4th Cir. 2022); Brockington v. Boykins, 637 F.3d 503, 506 (4th Cir. 2011); Doe ex rel. Johnson v. S.C. Dep't of Soc. Servs., 597 F.3d 163, 169 (4th Cir. 2010). "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011) (cleaned up); see Rivas-Villegas v. Cortesluna, 595 U.S. 1, 4–5 (2021) (per curiam); King, 76 F.4th at 264–65; Sharpe, 59 F.4th at 682–84. Although a case need not be directly controlling, "existing precedent must have placed the statutory or constitutional question beyond debate." al-Kidd, 563 U.S. at 741; see Rivas-Villegas, 595 U.S. at 4–6; King, 76 F.4th at 266–68; Sharpe, 59 F.4th at 682–84.

To determine whether an officer's conduct violates clearly established law, a court must first specifically define the right. See, e.g., City of Tahlequah v. Bond, 595 U.S. 9, 12–13 (2021) (per curiam). "Such specificity is especially important in the Fourth Amendment context . . . ." Id. (quotation omitted). Once the court specifically defines the right, the court must determine whether existing precedent placed the statutory or constitutional question "beyond debate." Kisela, 138 S. Ct. at 1152 (quotation omitted). "It is not enough that a rule be suggested by then-existing precedent; the rule's contours must be so well defined that it is clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Bond, 595 U.S. at 12 (quotation omitted); see Wesby, 583

8

U.S. at 63. An officer is entitled to qualified immunity "unless existing precedent 'squarely governs' the specific facts at issue." Kisela, 138 S. Ct. at 1153 (quoting Mullenix v. Luna, 577 U.S. 7, 13 (2015) (per curiam)); see Wesby, 583 U.S. at 63–66.

The Supreme Court has "not yet decided what precedents—other than [its] own—qualify as controlling authority for purposes of qualified immunity." Wesby, 583 U.S. at 66 n.8; see Kisela, 138 S. Ct. at 1152–54; Taylor v. Barkes, 575 U.S. 822, 825–27 (2015) (per curiam); City & Cnty. of S.F. v. Sheehan, 575 U.S. 600, 613–14 (2015); Carroll v. Carman, 574 U.S. 13, 16–17 (2014) (per curiam). In the Fourth Circuit, "existing precedent" includes precedent of the United States Supreme Court, the Fourth Circuit, and the highest court of the state in which the action arose. See Doe ex rel. Johnson, 597 F.3d at 176. It also includes "a consensus of persuasive authority from other jurisdictions." Sharpe, 59 F.4th at 683.

In Pearson, the Supreme Court held that the qualified-immunity analysis need not proceed in a particular sequence, and that "[t]he judges of the district courts and the courts of appeals [may] exercise their sound discretion in deciding which of the two prongs . . . should be addressed first in light of the circumstances in the particular case at hand." Pearson, 555 U.S. at 236; see King, 76 F.4th 259, 265. Qualified immunity shields a defendant if the answer to either prong is "no." See al-Kidd, 563 U.S. at 735; Miller v. Prince George's Cnty., 475 F.3d 621, 627 (4th Cir. 2007); Bostic v. Rodriguez, 667 F. Supp. 2d 591, 605–06 (E.D.N.C. 2009).

Shock fails to plausibly allege that Bird violated his Fourth Amendment rights. Moreover, Shock fails to plausibly allege that he was prosecuted without probable cause. In fact, Shock's power of attorney agreement combined with the facts of the case supported Bird's conduct. See [D.E. 9] 6–7. Thus, Bird has qualified immunity, and the court dismisses Shock's malicious prosecution claim against Bird.

9

C.

Shock alleges a Monell claim and a respondeat superior claim against the City of Cary. See [D.E. 1-1] 12–13. Monell, however, is not a cause of action. See Monell, 436 U.S. at 690–91. Rather, Monell stands for the proposition that municipalities are persons under section 1983 and can be sued under section 1983. See id.; Kennedy v. Rowe, No. 5:23-CV-264, 2023 WL 6612437, at *3 n.2 (E.D.N.C. Oct. 10, 2023) (unpublished). Moreover, Shock failed to name the City of Cary as a party in the caption. See Fed. R. Civ. P. 10(a). And Shock failed to serve the City of Cary with a complaint. See Fed. R. Civ. P. 4(a). Thus, the City of Cary is not a party to this action. Accordingly, the court dismisses claims five and six.

III.

In sum, the court GRANTS defendant Bird's motion to dismiss [D.E. 8] and DISMISSES WITH PREJUDICE plaintiff's complaint against defendant Bird. The court also DISMISSES WITH PREJUDICE any claim against the City of Cary.

SO ORDERED. This 5 day of February, 2024.

JAMES C. DEVER III
United States District Judge