IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:23-CV-466-D

| | |
|---|---|
| BRADLEY SHOCK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| WELLS FARGO BANK, N.A., et al., ) | |
| ) | |
| Defendants. ) | |

On June 28, 2023, Bradley Shock ("Shock" or "plaintiff") filed a complaint in Wake County Superior Court against Wells Fargo Bank, N.A. ("Wells Fargo") and David Bird ("Bird"), individually and his official capacity as a City of Cary Police Officer (collectively, "defendants"). See [D.E. 1-1]. Shock alleges (1) malicious prosecution (against Wells Fargo and Bird), (2) negligence (against Wells Fargo only), (3) negligent infliction of emotional distress (against Wells Fargo only), (4) a violation of the Fifth Amendment of the United States Constitution under 42 U.S.C. § 1983 (against Bird only), (5) a violation of Monell v. Department of Social Services, 436 U.S. 658 (1978) (against the City of Cary only), and (6) respondeat superior (against the City of Cary only). See [D.E. 1-1] 8–13. Shock seeks damages in excess of $25,000, attorney's fees, and any other applicable remedy. See id. at 11, 13. On August 23, 2023, Bird, with the consent of Wells Fargo, removed this action to federal court [D.E. 1]. On February 5, 2024, the court granted Bird's motion to dismiss [D.E. 8] and dismissed Bird and the City of Cary from this action [D.E. 16]. On February 27, 2024, Wells Fargo asked this court to resolve the motion to dismiss it filed in state court and noted that Shock never responded to the motion. See [D.E. 18]; Fed. R. Civ. P. 12(b)(6). On February 28, 2024, the court granted Wells Fargo's motion to consider its motion to dismiss

[D.E. 19]. As explained below, the court grants Wells Fargo's motion to dismiss.

I.

On May 27, 2005, Betty Fallin ("Fallin") authorized Shock, her nephew, as her agent for a special durable power of attorney located at Wachovia Bank in Cary, North Carolina. See Compl. [D.E. 1-1] 7. In 2012, Fallin gave Shock signature authority and named Shock as her transfer of death beneficiary at the same bank (now a Wells Fargo). See id. During this time, Shock managed Fallin's online banking accounts and used a debit card attached to the account to pay bills on Fallin's behalf. See id. No issues arose with this arrangement. See id. In 2016, Fallin moved to Rex Nursing Home. See id. On December 2, 2016, Fallin updated her durable power of attorney to expand Shock's authority to include all her bank accounts. See id.

In November 2019, Shock left for a three-month vacation in Thailand. See id. Due to the COVID-19 pandemic, Shock obtained an extended visa to remain in Thailand. See id. at 7–8. In July 2020, Fallin died. See id. at 8. On an unknown date in the summer of 2020, Wells Fargo locked Fallin's account until Shock could produce a power of attorney. See id. Shock failed to produce the document. See id. In August 2020, Shock sent keys to his sister to retrieve the power of attorney from Fallin's residence. See id.

In September 2020, Shock gave the power of attorney to Bird, a detective for the Cary Police Department in Cary, North Carolina. See id. at 6, 8.[1] On November 6, 2020, the Cary Police Department obtained an arrest warrant charging Shock with Exploitation of an Older Adult or Disabled Adult, N.C. Gen. Stat. § 14-112.2(b). See id. at 8. On March 28, 2022, Shock's criminal case was dismissed. See id.

---

[1] Shock pleads no facts explaining why he gave the power of attorney to Detective Bird or when he returned from Thailand.

II.

A motion to dismiss under Rule 12(b)(6) tests the complaint's legal and factual sufficiency. See Ashcroft v. Iqbal, 556 U.S. 662, 677–80 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554–63 (2007); Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). To withstand a Rule 12(b)(6) motion, a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (quotation omitted); see Twombly, 550 U.S. at 570; Giarratano, 521 F.3d at 302. In considering the motion, the court must construe the facts and reasonable inferences "in the light most favorable to [the nonmoving party]." Massey v. Ojaniit, 759 F.3d 343, 352 (4th Cir. 2014) (quotation omitted); see Clatterbuck v. City of Charlottesville, 708 F.3d 549, 557 (4th Cir. 2013), abrogated on other grounds by Reed v. Town of Gilbert, 576 U.S. 155 (2015). A court need not accept as true a complaint's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 678–79. Rather, a plaintiff's factual allegations must "nudge[] [his] claims," Twombly, 550 U.S. at 570, beyond the realm of "mere possibility" into "plausibility." Iqbal, 556 U.S. at 678–79.

When evaluating a motion to dismiss, a court considers the pleadings and any materials "attached or incorporated into the complaint." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011); see Fed. R. Civ. P. 10(c); Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 165–66 (4th Cir. 2016); Thompson v. Greene, 427 F.3d 263, 268 (4th Cir. 2005). A court also may consider a document submitted by a moving party if it is "integral to the complaint[,] and there is no dispute about the document's authenticity" without converting the motion into one for summary judgment. Goines, 822 F.3d at 166. "[I]n the event of conflict between the bare

3

allegations of the complaint and any exhibit attached . . . , the exhibit prevails." Id. (quotation omitted); see Fayetteville Invs. v. Com. Builders, Inc., 936 F.2d 1462, 1465 (4th Cir. 1991). Additionally, a court may take judicial notice of public records. See, e.g., Fed. R. Evid. 201; Tellabs, Inc. v. Makor Issues & Rts., Ltd., 551 U.S. 308, 322 (2007); Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

North Carolina law applies to some claims in this action. For those claims, this court must predict how the Supreme Court of North Carolina would rule on any disputed state-law issue. See Twin City Fire Ins. Co. v. Ben Arnold-Sunbelt Beverage Co. of S.C., 433 F.3d 365, 369 (4th Cir. 2005). First, the court looks to opinions of the Supreme Court of North Carolina. See Parkway 1046, LLC v. U.S. Home Corp., 961 F.3d 301, 306 (4th Cir. 2020); Stahle v. CTS Corp., 817 F.3d 96, 100 (4th Cir. 2016). If there are no governing opinions from that court, this court may consider the opinions of the North Carolina Court of Appeals, treatises, and "the practices of other states." Twin City Fire Ins. Co., 433 F.3d at 369 (quotation and citation omitted). In doing so, this court "should not create or expand a [s]tate's public policy." Time Warner Ent.-Advance/Newhouse P'ship v. Carteret-Craven Elec. Membership Corp., 506 F.3d 304, 314 (4th Cir. 2007) (alteration and quotation omitted); see Day & Zimmermann, Inc. v. Challoner, 423 U.S. 3, 4 (1975) (per curiam); Wade v. Danek Med., Inc., 182 F.3d 281, 286 (4th Cir. 1999). Moreover, in predicting how the highest court of a state would address an issue that it has not yet resolved, this court must "follow the decision of an intermediate state appellate court unless there is persuasive data that the highest court would decide differently." Town of Nags Head v. Toloczko, 728 F.3d 391, 398 (4th Cir. 2013) (quotation omitted); see Hicks v. Feiock, 485 U.S. 624, 629–30 & n.3 (1988).

4

A.

Under North Carolina law, to state a malicious prosecution claim, a plaintiff must plausibly allege that the defendant: "(1) initiated or participated in the earlier proceeding, (2) did so maliciously, (3) without probable cause, and (4) the earlier proceeding ended in favor of the plaintiff." Turner v. Thomas, 369 N.C. 419, 425, 794 S.E.2d 439, 444 (2016); see N.C. Farm Bureau Mut. Ins. Co. v. Cully's Motorcross Park, Inc., 366 N.C. 505, 512, 742 S.E.2d 781, 786–87 (2013). Probable cause means "the existence of such facts and circumstances, known to the defendant at the time, as would induce a reasonable man to commence a prosecution." Turner, 369 N.C. at 425, 794 S.E.2d at 444 (cleaned up); see Best v. Duke Univ., 337 N.C. 742, 750, 448 S.E.2d 506, 510 (1994); Cook v. Lanier, 267 N.C. 166, 170, 147 S.E.2d 910, 914 (1966). A criminal proceeding ending in Shock's favor alone does not "automatically negate the existence of probable cause at the time prosecution was commenced" or establish malice. Turner, 369 N.C. at 425, 794 S.E.2d at 445.

"Any financial institution . . . having reasonable cause to believe that a[n] . . . older adult is the victim . . . of financial exploitation shall report such information to . . . [t]he appropriate local law enforcement agency." N.C. Gen. Stat. § 108A-115(a) (emphasis added). "No financial institution . . . who acts in good faith in making a report . . . may be held liable in any action for doing so." Id. § 108-115(c).

Wells Fargo reported suspicious fraudulent banking activity on Fallin's account to the Cary Police Department. See Compl. 8. Under North Carolina law, Wells Fargo did not need probable cause, only reasonable cause, to report this information. Compare id. at 9, with N.C. Gen. Stat. § 108A-115(a). Because Wells Fargo complied with its statutory duties under North Carolina law, it cannot be held liable for making this report to the Cary Police Department. See N.C. Gen. Stat. § 108A-115(c). Thus, Shock fails to plausibly allege a malicious prosecution claim. Accordingly, the

5

court dismisses Shock's malicious prosecution claim against Wells Fargo.

B.

Under North Carolina law, negligence requires "(1) duty, (2) breach, (3) causation, and (4) damages." Bryant v. Adams, 116 N.C. App. 448, 465, 448 S.E.2d 832, 841 (1994); see Holley v. Burroughs Wellcome Co., 318 N.C. 352, 355, 348 S.E.2d 772, 774 (1986); Morgan v. Cavalier Acquisition Corp., 111 N.C. App. 520, 528, 432 S.E.2d 915, 919 (1993). "Negligence is the failure to exercise proper care in the performance of a legal duty which the defendant owed the plaintiff under the circumstances surrounding them." Dunning v. Forsyth Warehouse Co., 272 N.C. 723, 725, 158 S.E.2d 893, 895 (1968) (quotation omitted); see Moore v. Moore, 268 N.C. 110, 112, 150 S.E.2d 75, 77 (1966); Coulter v. Catawba Cnty. Bd. of Educ., 189 N.C. App. 183, 185, 657 S.E.2d 428, 430 (2008).

A plaintiff must plausibly allege that "(1) [the] defendant failed to exercise due care in the performance of some legal duty owed to [the] plaintiff under the circumstances; and (2) the negligent breach of such duty was the proximate cause of the injury." Whisnant v. Carolina Farm Credit, 204 N.C. App. 84, 93–94, 693 S.E.2d 149, 156 (2010) (quotation omitted); see Ward v. Carmona, 368 N.C. 35, 37, 770 S.E.2d 70, 72 (2015); Bridges v. Parrish, 366 N.C. 539, 541, 742 S.E.2d 794, 796 (2013); Fussell v. N.C. Farm Bureau Mut. Ins. Co., 364 N.C. 222, 226, 695 S.E.2d 437, 440 (2010). Banks have no duty to non-customers. See Bottom v. Bailey, 238 N.C. App. 202, 207–08, 767 S.E.2d 883, 887 (2014); see also Squeeze Me Once, LLC v. SunTrust Bank, No. CV 19-787, 2020 WL 12968001, at *12–13 (M.D. La. Aug. 3, 2020) (unpublished) (construing North Carolina law). As for proximate causation, defendants may be held liable only for injuries "that were reasonably foreseeable and avoidable through the exercise of due care." Fussell, 364 N.C. at 226, 695 S.E.2d at 440.

6

Shock served as Fallin's agent under a special durable power of attorney over her Wells Fargo bank account. See Compl. 7. Shock does not plausibly allege that he is a customer of Wells Fargo or that Wells Fargo owes him any direct duty. Thus, Shock fails to plausibly allege that Wells Fargo had a duty to Shock. See Bottom, 238 N.C. App. at 207–08, 767 S.E.2d at 887. Accordingly, the court dismisses Shock's negligence claim against Wells Fargo.

C.

A negligent infliction of emotional distress claim requires a plaintiff to plausibly allege that "(i) [the] defendant negligently engaged in conduct; (ii) it was reasonably foreseeable the conduct would cause [the] plaintiff severe emotional distress; and (iii) the conduct in fact caused [the] plaintiff to suffer such distress." Andersen v. Baccus, 335 N.C. 526, 531, 439 S.E.2d 136, 139 (1994); see Johnson v. Ruark Obstetrics & Gynecology Assocs., P.A., 327 N.C. 283, 304, 395 S.E.2d 85, 97 (1990); Acosta v. Byrum, 180 N.C. App. 562, 567, 638 S.E.2d 246, 250 (2006). North Carolina has long recognized NIED claims. See, e.g., Bailey v. Long, 172 N.C. 661, 662, 90 S.E. 809, 810 (1916). A plaintiff, however, must prove that he suffered such severe emotional distress as a "proximate and foreseeable result of the defendant's negligence." Johnson, 327 N.C. at 304, 395 S.E.2d at 97 (emphasis omitted). To determine whether the plaintiff's injury was a foreseeable result of the defendant's negligence, a court considers three factors: (1) the plaintiff's proximity to the negligent act; (2) the relationship between the plaintiff and the other person for whose welfare the plaintiff is concerned; and (3) whether the plaintiff personally observed the negligent act. See id. at 305, 395 S.E.2d at 98.

Shock fails to plausibly allege that Wells Fargo negligently engaged in conduct. In fact, Wells Fargo fulfilled its statutory duty to Fallin. See N.C. Gen. Stat. § 108A-115(a). Accordingly, the court dismisses Shock's negligent infliction of emotional distress claim against Wells Fargo.

7

III.

In sum, the court GRANTS defendant Wells Fargo's motion to dismiss [D.E. 1-2] and DISMISSES WITH PREJUDICE plaintiff's complaint against defendant Wells Fargo. The clerk shall close the case.

SO ORDERED. This 4 day of March, 2024.

JAMES C. DEVER III
United States District Judge